UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOHN MILES GATHRIGHT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-07961** |
| **ANDREW SAUL, COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **SECTION: "T" (4)** |

**REPORT AND RECOMMENDATION**

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied John Miles Gathright's ("Gathright") claim for closed period of disability and Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

**I.   Factual Summary**

Gathright is a fifty-one (51 years and 11 months) year old male closely approaching advanced age with relevant work history as a medical equipment sales representative and drug/pharmaceutical sales representatives. R. Doc. 8-3, Tr. 40; R. Doc. 8-3, Tr. 66. He complains that his disability began on November 1, 2015, because of Ischiogluteal Bursitis, Lumbar Nerve Root Disorder, Post Laminectomy Syndrome, Primary Osteoarthritis of Both Knees, Spinal Stenosis, Bulging Disc and Degenerative Facet Joints. R. Doc. 8-3, Tr. 66.

On October 18, 2016, Gathright filed an application for a closed period of disability and Disability Insurance Benefits. R. Doc. 8-2, Tr. 35. The claim was initially denied on January 5, 2017. *Id.* Gathright, thereafter, submitted a request for hearing on January 12, 2017, before Administrative Law Judge ("ALJ") Mary Gattuso. *Id.* The hearing took place on December 12, 2017, but Gathright failed to appear and testify because he had returned to work as of April 3,

2017 in his field of sales.¹ *Id.*; R. Doc. 8-2, Tr. 49. Five days before the scheduled hearing, the claimant through advice of counsel requested a closed period of disability from November 1, 2015 through April 3, 2017. R. Doc. 8-2, Tr. 35.

Thereafter, on February 14, 2018, the ALJ found that Gathright was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2016 the last date of insured. R. Doc. 8-2, Tr. 42. In reaching the decision, the ALJ found that Gathright met the insured status requirements through March 31, 2016. R. Doc. 8-2. Tr. 37 ("Finding 1"). The ALJ also found that Gathright has not engaged in substantial gainful activity through March 31, 2016, but noted he returned to work in April 2017; thus, engaging in substantial activity. R. Doc. 8-2, Tr. 37-38 ("Finding 2"). The ALJ further found that Gathright had disorders of the spine, which are considered severe impairments. R. Doc. 8-2, Tr. 38 ("Finding 3"). The ALJ, nonetheless, held that through the date last insured and the date of the decision, Gathright did not have an impairment or combination impairments that met or medically equaled the severity of one of the listed impairments. *Id.* ("Finding 4").

The ALJ found that through the date last insured and the date of the decision, Gathright had the residual functional capacity to perform light work except for certain delineated limitations. *Id.* ("Finding 5"). Gathright's ability to work was limited in that he was neither able to climb ladders, ropes or scaffolds and scaffolds nor occasionally climb ramps and stairs. *Id.* The ALJ found that while he could occasionally balance, stoop, crouch, kneel and crawl, that he could

---

¹ Gathright's counsel advised the ALJ that after Gathright received radiofrequency neurotomy that his pain significantly decreased and allowed him to return to work. His counsel also indicated that it would be a hardship for him to appear at the hearing, and that he was working twelve (12) to fourteen (14) hours a day, and, therefore, requested a waiver of his appearance as a nonessential witness. R. Doc. 8-2, Tr. 50. The reason that the ALJ decided that Gathright was a nonessential witness is due to her belief that the medical record fully documented the scope of his testimony and his limitations were fully documented by the medicals and other evidence. *Id.*

not, according to the ALJ, perform work with moving or dangerous machinery or unprotected heights. *Id.* Additionally, he could not perform commercial driving and was limited to unskilled work that involves routine repetitive tasks. *Id.*

The ALJ found that, Gathright, an individual closely approaching advanced age, on the date of last insured to the date of the date of the decision, was unable to perform any past relevant work. R. Doc. 8-2, Tr. 40 ("Finding 7"). The ALJ also held that Gathright has at least a high school education and is able to communicate in English. *Id.* ("Finding 8").

The ALJ found that the transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant is "not disabled" whether or not he had transferable job skills. *Id.* ("Finding 9"). Finally, the ALJ ultimately found that given Gathright's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed. R. Doc. 8-2, Tr. 41 ("Finding 10").

Gathright now challenges the ALJ's decision that he was not under a disability as defined in the Social Security Act from November 1, 2015 through March 31, 2016. R. Doc. 12, p. 1. Gathright alleges that the ALJ failed to follow a proper standard by neglecting to perform a function by function assessment of his residual functional capacity ("RFC"). *Id.* Gathright also alleges that the ALJ neglected relevant evidence, facts, and his arguments that supported his disability, which requires remand. R. Doc. 12, p. 2.

The Commissioner contends that any belief by Gathright that his inability to perform a specific job would render him eligible for Social Security disability benefits is misplaced. R. Doc. 18, p. 1-2. Instead, the regulations provide that the claimant must be unable to perform <u>any</u> job

that exists in significant numbers in the economy. R. Doc. 18, p. 2. The Commissioner contends that while Gathright could not perform jobs requiring lifting heavy weights, but that the vocational expert testimony established he could perform several light jobs that exist in significant numbers in the national economy. *Id.* Therefore, the ALJ ultimately contends that her opinion is based upon substantial evidence. *Id.*

**II.    Standard of Review**

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not reweigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process. The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**III.    Analysis**

Gathright contends that during the closed period of his alleged disability that his RFC of unskilled sedentary work; or that he required an alternate sit/stand option every five (5) to ten (10) minutes; or that he would periodically need to lay down during the day. R. Doc. 12, p. 2.

Gathright's closed period of disability, as he alleges, was November 1, 2015, when Gathright stopped working due to severe low back pain until April 3, 2017, when he returned to work. *Id.* However, he contends that the Dr. Mary Lanette Rees with the Louisiana State Agency, the Disability Determination Services ("DDS"), assessed him with RFC of medium work, primarily based on an MRI taken in April 2015 (pre-onset) date and not his subsequent MRIS within his alleged closed period of availability. R. Doc. 12, p. 2; *see also* R. Doc. 8-3, Tr. 62-72.

### A. Relevant Time Period

As an initial note, the Commissioner contends that Plaintiff does not address the issue of whether the ALJ properly considered the relevant time period from November 2015 through March 31, 2016, as opposed to April 3, 2017, as Plaintiff urged. R. Doc. 18, p. 5-6. The Commissioner, instead, contends that Plaintiff Gathright is only potentially eligible for disability insurance benefits through the date claimant last met the insured status requirements, which the Commissioner contends is the date of Gathright's last contributions to the social security program. *Id.*; *see also* R. Doc. 8-2, Tr. 35 (explaining that Plaintiff's earning records demonstrated he had acquired sufficient quarters of coverage to remain insured post-work activity through March 31, 2016). The Commissioner further contends that Plaintiff Gathright cannot be eligible for Disability Insurance benefits beyond March 31, 2016 where he did not establish that the onset of his disability occurred on or before that date. R. Doc. 18, p. 6.

Here, the evidence in the record demonstrates that Plaintiff Gathright last met the insured status requirements on March 31, 2016. Accordingly, the Court will consider the relevant time period from November 1, 2015, the alleged onset date, through March 31, 2016.

### B. The Commissioner's Consideration of Relevant Evidence and Failure to Conduct

### a Function-By-Function Analysis

Next, the Commissioner contends that the ALJ analyzed Gathright's residual functional capacity pursuant to the five-step sequential evaluation process, and, at step five, she found that Gathright could perform jobs that exist in significant numbers in the national economy. R. Doc. 18, p. 3. The Commissioner noted that the ALJ accorded "fair weight" to the opinion of the State Agency medical consultant, which opined that Plaintiff could not lift more than fifty pounds (50 lbs.) at a time and was consistent with the opinion of Gathright's October 2016 pain management physician's opinion as to his lifting restrictions. R. Doc. 18, p. 7.

The ALJ properly noted that Gathright's period of disability began on November 1, 2015. She also noted that he failed to appear and testify at a hearing on December 12, 2017, and that, five days before the hearing, he requested consideration of his disability for a closed period: November 1, 2015 through April 3, 2017. *See* R. Doc. 8-2, Tr. 35. Because Gathright only met the insured status requirements through March 31, 2016, and Gathright has not established his disability before that date, the consideration of his claim for disability insurance benefits ("DIB") benefits would have a close date March 31, 2016, rather than April 2017 as Plaintiff contends. *Id.; see Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985)). The ALJ noted that Gathright returned to work in April 2017, and, therefore, as of that date, was not disabled because he was actively engaged in substantial gainful activity. *Id.* As such, the ALJ proceeded to considered whether Gathright was disabled through the date of the decision for all periods. R. Doc. 8-2, Tr. 37-38.

The ALJ noted that several months before the onset date of his disability, Gathright was seen by a neurologist, Michael T. Happel, M.D., complaining of symptoms suggestive of degenerative musculoskeletal facet pain after lifting a bucket of wet sand. R. Doc. 8-2, Tr. 39. Happel, accordingly, referred Gathright for additional testing. *Id.* He also noted that during the

7

period of disability he was treated at Northlake Neurological Institute and Acupuncture Herbal Center and received treatments that consisted of a Medrol Dosepak, Lyrica, and massages. *Id.* After the expiration of his last insured date, on May 20, 2016, Gathright underwent an MRI that revealed a left L4-5 facet joint synovial cyst. R. Doc. 8-9, Tr. 468. Between July 2016 and September 2016, Gathright also epidural steroid injections and a spinal cord stimulator for two months. R. Doc. 8-2, Tr. 39. The ALJ noted that after the insured period the MRI revealed mild to moderate narrowing of the L4-L5 intervertebral disc space and examinations showed remarkable decreased sensation to the left anterior and lateral foot followed by diagnoses of the ischial bursitis and chronic pain syndrome. R. Doc. 8-2, Tr. 39-40. The ALJ noted that most of his care occurred before the alleged onset date. R. Doc. 8-2, Tr. 40 The ALJ stated she relied upon the State Agency medical consultant's opinion that provided for medium, which was consistent with the lifting restrictions imposed by the pain management physician, in reaching her determination that Plaintiff was not disabled. *Id.* She further found that the conservative treatment received before the onset date was also consistent with the ultimate conclusion that Gathright was not disabled. *Id.*

The State Agency consultant, in rendering her opinion, considered medical evidence before November 2015. There were only two entries from Dr. Happel's office entered into evidence during the period of November 1, 2015 through March 31, 2016, and those entries were for December 10, 2015 and February 10, 2016. *See* R. Doc. 8-8, Tr. 323, 326. The February entry specifically noted that Gathright had Piriformis syndrome, pain of the lower back, and lower back muscle guarding, but that he had normal station and gait. R. Doc. 8-8, Tr. 323-25.

The record indicates that there were limited medical records for the closed period. Besides Dr. Happel's December 2015 and February 2016 entries, the remaining records are outside of the closed period. While Gathright indicates that the state agency's determination was based upon

events before the closed period, it also took into consideration his condition in February 2016, during the closed period. The records provided detailing encounters beyond March 31, 2016, including the subsequent MRIs, need not have been considered.

The MRI which Gathright alleges occurred after his alleged onset date in November 2015, actually occurred on May 20, 2016, outside of the insured period, and showed mild to moderate facet joint arthropathy with left ligamentum flavum facet joint synovial cyst, and a mild compression adjacent lateral recess on the region of the left L.V. nerve root. R. Doc. 8-9, Tr. 468. Because Gathright last met the insured status on March 31, 2016, and the subsequent MRI was not taken until May 20, 2016, after his insured status ended and outside the relevant time period, even if Gathright could have been disabled the ALJ's reliance on the State Agency's assessment is not misplaced. *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979)("A claimant must show that she was disabled on or before the last day of her insured status").

Gathright next contends that he was also diagnosed with Piriformis Syndrome with a compression lesion on the sciatic nerve. R. Doc. 12, p. 3. The condition caused severe pain from the back to the leg which he contends was so sever that he had to lie flat on his stomach for relief. *Id.* at p. 3-4. The diagnosis of Piriformis Syndrome was made on February 10, 2016, before the alleged onset date and continued throughout the closed period. *Id.*

While Gathright contends that the ALJ did not mention this diagnosis in the opinion, he relied upon the State Agency determination. The State Agency decision did consider Piriformis Syndrome and examined function-by-function Gathright's exertional limitations. The ALJ adopted the agency doctor's opinion noting that there were some limitations, but those limitations were not disabling. *See* R. Doc. 8-3, Tr. 68-70. The ALJ also noted that Gathright's Piriformis syndrome was successfully treated through medication and physical therapy. R. Doc. 8-2, Tr. 39. This satisfies the legal standard as set forth by the Fifth Circuit in *Myers v. Apfel*, 238 F. 3d 617,

620 (5th Cir. 2001). *Beck v. Barnhart*, 205 Fed. App'x 207 (5th Cir. 2006) (citing *Onishea v. Barnhart*, 116 Fed. App'x 1, 2 (5th Cir. 20040 (unpublished)).The Court is of the opinion that the ALJ properly considered the limited medical records that exist during the closed period and her determination that Gathright was not disabled during the closed period, as defined by the date of the last insured, was based on the relevant evidence and any failure to perform a function-by-function assessment on the part of Commissioner was not an error.

### C. The RFC Assessment and Reliance on the Vocational Expert

Gathright next contends that the ALJ's RFC is not supported by substantial evidence. Gathright contends that the ALJ did not consider his hypotheticals as presented by his attorney in the decision. R. Doc. 12, p. 5. Gathright contends that the failure to consider the truthfulness of his proposed modifications to the hypothetical despite the fact that there was evidentiary support in the record constitutes reversible error. *Id.*

The Commissioner contends that the ALJ made her RFC determination properly based on the relevant credible medical, testimonial, and documentary evidence of record. R. Doc. 18, p. 6. The Commissioner contends that the ALJ accorded "fair weight" to the opinion of the state agency medical consultant who reviewed the medical evidence on December 26, 2016. R. Doc. 18, p. 7. The Commissioner notes that the State Agency opined that Gathright could perform medium work, which is defined as work involving lifting no more than fifty pounds (50 lbs.) at a time. R. Doc. 8-3, Tr. 71. The Commissioner contends that the ALJ's failure to address the diagnosis of Piriformis Syndrome, is a mere diagnosis of an impairment and does not establish the existence a disabling condition, which must be shown by the claimant through his inability to engage in substantial gainful activity. R. Doc. 18, p. 7.

The record shows that the ALJ address the pre-disability period medical evidence, the medical evidence during the period, and post-period medical evidence. The ALJ considered the

post-closed-period functional report from August 2016. R. Doc. 8-6, Tr. 167-190. The ALJ noted that Gathright reported problems with lifting, squatting, bending, standing, reaching, walking, talking, kneeling, sitting climbing, stairs, seeing remembering, completing task concentrating, understanding, following instructions, using his hands and getting along with others. R. Doc. 8-2, Tr. 39. The ALJ also noted the daily living activities as reported by the claimant and also noted that Gathright indicated that he was looking for employment and attending doctors' appointments. *Id.* She also noted that Gathright did not use any assistive device and included a listing of the medication he was taking along with their side effects. *Id.*

The ALJ also considered the progression of his condition after the close of the disability period and that Gathright received steroid injections, a spinal cord stimulator, and was diagnosed with a synovial cyst at the L4-5 facet joint. *Id.* The ALJ noted the vocational expert's testimony to a hypothetical to the effect that a person with the same residual functional capacity as the claimant would be incapable of performing his past relevant work. R. Doc. 8-2, Tr. 40.

The ALJ noted that the vocational expert testified that Gathright would, nonetheless, be able to perform work as a general office clerk, information clerk, or interviewer, all light and unskilled jobs. R. Doc. 8-2, Tr. 41. Consequently, the ALJ concluded that Gathright was not disabled during the closed period.

Gathright finally claims that the ALJ misrepresented his treatments as conservative when she did not consider the bursa injections, radio frequency neurotomy, and an implanted spinal cord stimulator. R. Doc. 12, p. 11. However, these procedures were outside of the closed period. Prior to these procedures and the end of the closed period, Gathright did undertake conservative treatment to include regular medication. Additionally, the limitation on bending and lifting was noted on May 20, 2016, also after the closed disability period. R. Doc. 8-9, Tr. 467. Given that the ALJ properly considered the scope of medical treatment during the closed period, and the

hypothetical to the vocation expert properly factored in Gathright's limitations and the medical treatment, the Court finds the ALJ's opinion is based upon substantial evidence. The Court notes that the hypothetical as proposed by Gathright's counsel was not supportable by the evidence within the record for the closed relevant time period where it necessarily incorporated aspects of treatment that took place beyond the last date of insured on March 31, 2016. The ALJ, accordingly, could properly disregard Plaintiff's hypothetical. *Jenkins v. Astrue*, 250 Fed. App'x 645, 647 (5th Cir. 2007) (citing *Owens*, 770 F. 2d at 1282). Consequently, the ALJ's RFC finding is based on substantial evidence.

### IV.     Recommendation

It is the **RECOMMENDED** that the ALJ's decision denying John Miles Gathright's claim for closed period of disability and Disability Insurance Benefits be **AFFIRMED.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 1st day of April, 2020

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**